MAX KURTZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROBERT KURTZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11411, 11412, 15959, 15960.   Promulgated October 10, 1927.

1. The evidence in these proceedings does not show that the Commissioner erred in his determination of the reasonable allowance for exhaustion, wear and tear of machinery and equipment, and automobiles, and in refusing to allow the cost of plumbing and heating fixtures in the taxable year 1923 as expense.

2. A sale of 436,000 Italian lire in the year 1920 was *bona fide* and the loss of $34,870.80 sustained upon such sale was a proper deduction in that year.

3. The evidence shows that $1,479.43 represented wages paid employees engaged in manufacturing operations, and the Commissioner erred in holding that this amount was paid to a superintendent of construction in the erection of a new building, and should be capitalized.

4. The amount of $520 expended in 1920 for whitewashing a building was an ordinary and necessary business expense for that year.

5. The partnership of which petitioners were members kept its books upon an accrual basis. In 1921 a considerable amount of its merchandise was destroyed by fire, which loss was fully covered by insurance. The insurance company admitted liability for whatever loss had been sustained, but disagreed with the partners as to the amount of the loss sustained. This was finally adjusted in 1922 and 1923 and the partnership was paid the total loss claimed. The Commissioner allowed the total loss sustained in 1921 and offset against it the insurance thereon, a portion of which was not, however, actually received by the partnership until 1922 and 1923. *Held,* that the Commissioner did not err in this regard.

*Briggs G. Simpich, Esq.,* and *Charles P. Swope, Esq.,* for the petitioners.

*Frank S. Easby-Smith, Esq.,* for the respondent.

On December 2, 1925, the Commissioner mailed to petitioners notices in which he proposed to assess against them deficiencies as follows:

|  | 1920 | 1921 |
|---|---|---|
| Max Kurtz | $2, 108. 12 | $634. 78 |
| Robert Kurtz | 1, 594. 12 | 846. 57 |

Petitioners instituted proceedings, Docket Nos. 11411 and 11412, for the redetermination of these deficiencies.

On March 16, 1926, the Commissioner mailed petitioners notices in which he proposed to assess against them deficiencies as follows:

|  | 1922 | 1923 |
|---|---|---|
| Max Kurtz | $39.84 | $265.76 |
| Robert Kurtz | 37.13 | 283.85 |

Petitioners instituted proceedings, Docket Nos. 15959 and 15960, for the redetermination of these deficiencies.

Petitioners, who were, during the years involved, members of the partnership of Kurtz Brothers, were not accorded a hearing before the Commissioner in connection with the additional tax proposed to be assessed against them. In these proceedings they claim that the Commissioner erred (1) in failing to allow a deduction for 1920 of $1,479.43, representing wages paid employees; (2) in treating the cost of plumbing and heating fixtures as a part of the real estate account instead of as machinery and equipment for the purpose of determining the deduction for exhaustion, wear and tear; (3) failure to determine adequate depreciation on separate items of machinery and equipment for each of the years involved; (4) in allowing depreciation on automobiles for each of the years involved at the rate of 20 per cent instead of 25 per cent per annum; (5) in failing to allow as deductions from gross income for the year 1920 a loss of $34,870.80, alleged to have been sustained in that year from the sale of 436,000 Italian lire; (6) in including as income for the year 1921 certain fire insurance which was not received by the partnership until 1922 and 1923; (7) in refusing to allow as an ordinary and necessary business expense a deduction of $520, representing the amount expended in the year 1923 for whitewashing the walls of an old building, and (8) in failing to allow as a deduction from gross income for the year 1923, the cost of plumbing and electrical fixtures.

### FINDINGS OF FACT.

Petitioners are brothers engaged in the sale of groceries at wholesale and in the manufacture of macaroni at Philadelphia, Pa. The business was established in 1892 and has since been conducted as a partnership in which each of the petitioners has owned a one-half interest. Originally the activities of the partnership were confined to the sale of groceries at wholesale and subsequently, during the year 1916, the manufacture and sale of macaroni on a small scale was commenced at a plant located on Seventh Street in the City of Philadelphia. During the year 1919, the partnership made extensive alterations and additions to its property located on Ninth Street, and since that year it has engaged in the manufacture and sale of

macaroni on a large scale. Max Kurtz had exclusive supervision of the manufacture of macaroni.

The parties are in accord as to the values or cost of the various properties upon which the annual deduction for exhaustion, wear and tear is in controversy. The Commissioner computed the allowance in each of the taxable years at the following rates:

|  | Per cent. |
|---|---|
| Automobiles | 20 |
| Horses and wagons | 20 |
| Machinery and equipment | 10 |
| Furniture and fixtures | 10 |
| Buildings | 2 |

Petitioners contend that the allowance for exhaustion, wear and tear for each of the taxable years should have been computed on the machinery and equipment values at rates ranging from 6⅔ per cent to 33⅓ per cent and on automobiles at 25 per cent, as follows:

|  | Per cent. |  | Per cent. |
|---|---|---|---|
| Macaroni machinery | 20 | Heating equipment | 6⅔ |
| Electrical equipment | 10 | Plumbing equipment | 6⅔ |
| Miscellaneous equipment | 20 | Automobiles | 25 |
| Dies and parts | 33⅓ | Buildings | 2 |
| Elevators | 10 |  |  |

There was no overtime operation of the plant during the taxable years.

During the years involved the partnership owned certain Ford, Dodge, and Studebaker passenger automobiles and certain automobile trucks. These cars were traded in after two or three years of use at substantial values.

During the calendar year 1920, the partnership paid wages to certain of its employees engaged in the manufacture of macaroni in the amount of $1,479.43. This amount was disallowed as a deduction by the Commissioner upon the ground that it represented an amount paid to a superintendent in connection with the construction of an addition to the plant of the partnership.

During 1919 the partnership of Kurtz Brothers purchased as an investment 436,000 Italian lire, for which it paid $50,000. In November, 1920, the partnership sold these lire to Joseph Binenstock, a half brother of petitioners, at the then rate of exchange for $15,129.20. At the time of the purchase of these lire, Binenstock, who was regularly engaged in business as a jobber of flour, was negotiating for the purchase of a large quantity of Italian olive oil and believed that he could make a substantial profit upon the lire. Shortly thereafter, Binenstock's negotiations for the purchase of the olive oil failed and on December 30, 1920, he sold the 436,000 lire back

to the partnership for $15,129.20, at the current rate of exchange, which was the same as at the time he made the purchase. The partnership claimed a loss of $34,870.80 on the sale of these lire to Binenstock. The Commissioner disallowed the loss on the ground that the sale to Binenstock was not *bona fide*.

During the year 1921 a fire occurred in the plant of the partnership, resulting in the destruction of a considerable amount of merchandise. The loss was fully covered by insurance. Immediately after the fire, the insurance company admitted liability for the loss under the insurance policies, but at the end of the year 1921 a satisfactory adjustment of the amount of the loss had not been arrived at between the insurance company and the partnership. In 1922 or in 1923, the insurance company paid the partnership the full amount of the loss claimed by it. The partnership kept its books upon an accrual basis. The Commissioner applied the total amount of insurance against the loss of merchandise destroyed by fire in 1921. The petitioners claim that the partnership is entitled to a deduction of the total amount of the loss by fire in the year 1921 as finally determined by the Commissioner and that the insurance money received for the destruction of such merchandise was income in the years 1922 and 1923 when actually received.

In the year 1923, the partnership constructed an addition to its plant and in that connection expended the sum of $886.25 for plumbing and $2,007.74 for heating equipment in both the new and old buildings, and the partnership charged these amounts to expense and the Commissioner restored them to capital account. Also in 1923, after the completion of the new addition, the partnership expended the sum of $520 for whitewashing the old portion of the building to make it conform in appearance with the new. This amount was deducted as an expense and the Commissioner capitalized the same.

OPINION.

LITTLETON: Petitioners contend that the allowance for exhaustion, wear and tear, as determined by the Commissioner by the use of a composite annual rate of 10 per cent, is inadequate, and that the allowance should be computed on each item making up the machinery and equipment account at the rates hereinbefore set forth.

From a consideration of all the evidence we believe the allowance made by the Commissioner for exhaustion, wear and tear of plant and equipment at a composite rate of 10 per cent is reasonable. Max Kurtz, who was the only witness testifying in this regard, undertook to give his opinion as to the probable life and the rate of depreciation of the various items of the plant and equipment, but his

testimony was equivocal and is not convincing. A consideration of his testimony convinces us that in making his claim for a larger allowance for exhaustion, wear and tear, he was interested more in the benefit which would be derived in the matter of reduction of taxes to be paid for the years involved than in the actual depreciation sustained by the property. It might be that, when considered separately, some few items of equipment, such as trays, etc., listed as miscellaneous equipment and dies and parts, constituting a very small portion of the total equipment, depreciated at a rate slightly greater than 10 per cent per annum, but when we consider the entire machinery and equipment account, we are satisfied that the actual exhaustion, wear and tear of a considerable portion thereof was less than 10 per cent. On the whole, we are of the opinion that the allowance made by the Commissioner through the use of a composite rate of 10 per cent per annum on the entire machinery and equipment account was reasonable, and his action in this regard is approved.

It appears that the Commissioner through a misunderstanding of the facts capitalized the amount of $1,479.43 as representing an amount paid to a superintendent in connection with the construction of an addition to the plant of the partnership. The evidence shows that this represented wages paid to employees engaged in the manufacture of macaroni and was, therefore, a proper deduction from gross income as an ordinary and necessary business expense for the year 1920.

We are satisfied from the evidence that the sale by the partnership of 436,000 Italian lire to Joseph Binenstock in the year 1920 for $15,129.20 was a *bona fide* transaction, and the loss claimed should be allowed.

The Board is of the opinion that, upon consideration of all the evidence, the Commissioner's allowance for exhaustion, wear and tear of automobiles at the rate of 20 per cent per annum was reasonable. The witness who testified in this regard merely stated that he thought the automobiles used by the partnership had a useful life of only four years. He apparently knew very little about the matter. He testified that the partnership had only Ford automobiles and that after they had been in use for about four years they were abandoned and discarded. There is other evidence which shows that the partnership had three different makes of passenger automobiles which were used by salesmen in the City of Philadelphia, and that in addition, certain automobile trucks were used for delivery purposes. There is evidence that these automobiles were traded in from time to time at substantial amounts for new automobiles. The evidence on this point is not sufficient to warrant us in disturbing

the allowance made by the Commissioner for depreciation on automobiles.

The partnership employed the accrual method of accounting in keeping its books. Some time in the year 1921 a fire occurred in the plant and destroyed certain merchandise which was fully covered by insurance. The insurance company admitted liability for the loss, but when the year 1921 ended, the amount of the fire loss had not been completely adjusted and the partnership and the insurance company were not in agreement as to the amount of the loss sustained as a result of the fire, and as to the total amount of money that the insurance company should pay. The insurance company had conceded the larger portion of the loss claimed by the partnership. Subsequently, in the years 1922 and 1923, the insurance company paid the full amount of the loss claimed by the partnership. The Commissioner allowed the total loss claimed by the partnership in the year 1921 and applied against the same in that year the amount of the insurance received thereon. We think that the Commissioner's action in this regard was correct. The partnership was compensated by insurance for the total loss sustained in the year 1921. The insurance due petitioners for the loss sustained, accrued in the year 1921 and was properly applied in that year against the amount of the loss by fire.

Petitioners claim that one-half of the amounts of $886.25 and $2,007.74, hereinbefore mentioned, expended in connection with plumbing and heating equipment, should be allowed as a deduction in the year 1923 as an ordinary and necessary expense upon the ground that that portion represented the cost of rearranging the plumbing and heating equipment in the old building so as to make it conform to the equipment in the new addition. The evidence in support of this claim is not convincing. There is testimony from petitioners' witness who testified on this point, that these amounts represented the cost of additional plumbing and heating equipment installed in the old as well as in the new building. The evidence is insufficient to show that the Commissioner erred in restoring these items to capital account.

The item of $520 expended for whitewashing the old building in order to make it conform in appearance to the new addition, appears to have been a minor item of expense and was, therefore, a proper deduction from gross income for the year 1923. The whitewash applied to the building had a useful life of only about six months.

*Judgment will be entered on 15 days' notice, under rule 50.*

Considered by SMITH and LOVE.